IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMIE ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-CV-179-WHA-WC |
| | ) | |
| SOUTH STAR LOGISTICS, INC., | ) | (WO) |
| and SURINDER SINGH GILL, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. Introduction**

This cause is before the court on the Defendants' post-trial motions. Specifically, the Defendants have filed a Renewed Motion for Judgment as a Matter of Law or Alternatively, Motion for New Trial, and Motion to Stay Execution of Judgment (Doc. # 120). Also before the court are the Plaintiff's Response (Doc. # 124) and the Defendants' Reply thereto (Doc. # 127).

This case was tried to jury verdict on June 8–9, 2015. It is a state law negligence action over which this court has federal diversity jurisdiction. The action arose out of a vehicle accident that occurred on September 12, 2012, in which a tractor-trailer owned by Defendant South Star Logistics, Inc. and driven by Defendant Gill collided with a pickup truck driven by the Plaintiff. The jury returned a verdict in the Plaintiff's favor and awarded damages in the amount of $500,000 (Doc. # 112).

The Defendants now move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, arguing that the evidence presented was legally insufficient to support the verdict. In the alternative, the Defendants argue they are entitled to a new trial pursuant to Fed. R. Civ. P. 59

due to three instances of admitted evidence that they submit were erroneous and prejudicial.

For the reasons to be discussed, the Motions for Judgment as a Matter of Law and for a New Trial are due to be DENIED.  The Motion for Stay of Execution of Judgment will be GRANTED.

## II. Standards

### A.  Motion for Judgment as a Matter of Law

A party is entitled to judgment as a matter of law under Rule 50 "if during a trial by jury the opposing party has been fully heard on the issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on that issue." *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003).  "The court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).  While "credence should also be given to 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses,'" the court should not usurp the jury's functions in making credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts. *Id.* (citing *Reeves*, 530 U.S. at 150–51).

The court should "consider whether such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor or one side that one party must prevail as a matter of law." *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003).  While the court views "the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence

suggesting that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* (internal quotations and citations omitted).

### B. Motion for New Trial

When a motion for new trial is based on an argument that evidence was improperly admitted, "a new trial is warranted only where the error has caused substantial prejudice to the affected party." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). Put another way, the error "must have affected 'substantial rights.'" *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951 (11th Cir. 2014). The proper inquiry "is always directed to the same central question—how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Peat*, 378 F.3d at 1162.

### III. Discussion

### A. Motion for Judgment as a Matter of Law

The Defendants allege they are entitled to judgment as a matter of law because there was no evidence presented at trial sufficient to cause a reasonable jury to conclude that Defendant Gill acted unreasonably during the collision with the Plaintiff's vehicle. Specifically, the Defendants argue that whichever version of the accident presented at trial the jury chose to believe, the evidence produced could not support the verdict as a matter of law.

The court disagrees. Because the Defendants' version of the facts presented at trial involved the Plaintiff cutting in front of Defendant Gill's tractor-trailer before slowing down to make a right-hand turn, the court assumes for the purposes of this discussion, along with the Defendants, that the jury believed the Plaintiff's version of the facts. In that version, the Plaintiff and other vehicles in his group made U-turns before traveling a short distance to make a right hand turn. Defendant Gill approached the Plaintiff's vehicle from behind after the U-turn, did

not move into the left lane, applied his brakes before impact, and collided with the Plaintiff's

vehicle.  The Defendants argue that there was no evidence presented of any unreasonable action

by Defendant Gill, such as speeding, distracted driving, or talking on a cell phone.  They further

argue that their expert, Joey Parker, "provided uncontradicted testimony regarding how a person

perceives a slower moving vehicle in front of him, when a person can physically comprehend the

dangerous nature of that slow moving vehicle, and the normal reaction time to respond to that

danger."  (Doc. # 120 at 5.)  The Defendants add:

> Based on the physical evidence and Plaintiff's testimony that he was driving no
> more than 5 MPH with his right turn-signal on, Mr. Parker was able to
> scientifically determine that Mr. Gill noticed and responded to the dangerous
> nature of Plaintiff's slow moving vehicle as a normal person would under the
> same conditions.

(*Id.*)

The Defendants fail to account for the fact that the jury was not required to believe the

expert's testimony.  In considering this Motion, the court is required to refrain from usurping the

jury's function in making credibility determinations.  *Thosteson*, 331 F.3d at 1298.  Furthermore,

while the court must give credence to uncontradicted evidence, that instruction only applies "to

the extent that the evidence comes from disinterested witnesses."  *Id.*  As a compensated expert

witness for the Defendants, Joey Parker was not a disinterested witness.  The jury was entitled to

determine that he was not credible.  Joey Parker's expert witness testimony cannot form the basis

for granting the Motion for Judgment as a Matter of Law.  *See Akouri*, 408 F.3d at 1343 (court

should "disregard all evidence favorable to the moving party that the jury is not required to

believe").

The Defendants also rely heavily on a decision of the Alabama Supreme Court, in which

the court affirmed a grant of summary judgment where there was "evidence the tractor-trailer

4

driver saw the plaintiffs' vehicle from 1000 feet away, [but] there was no proof that the driver

saw the plaintiff's vehicle was in peril."  (Doc. # 120 at 10 (discussing *Latham v. Redding*, 628

So.2d 490 (Ala. 1993).)  The holding of *Latham* is not dispositive in this instance for several

reasons.  First, Defendants' reliance on it is intertwined with their insistence that Joey Parker's

uncontroverted testimony means that "any assertion that Mr. Gill acted unreasonably in failing to

avoid the accident would be a speculative and conclusory allegation."  (Doc. # 120 at 10–11.)

For the reasons discussed above, the jury was entitled to disregard the expert's testimony.

Additionally, as the Defendants explain, in *Latham* the court noted that "other evidence showed

that under the circumstances, the tractor-trailer driver could not have avoided the accident."  (*Id.*

at 11.)  Here, there is no such evidence.  The Plaintiffs presented evidence that other drivers

moved into the left lane to avoid hitting the Plaintiff's vehicle, and Defendant Gill did not give

any reason why he also did not move into the left lane, since his testimony depicted an entirely

different version of the accident in which the Plaintiff cut in front of him from behind before

attempting to turn.  (Doc. # 118 at 50:16–51:5; Doc. # 124-2 at 2–4 [38:7–53:23].)[1]

      The Plaintiff alleged at trial and in response to the Defendants' motions that Defendant

Gill breached his duty to keep a lookout.  The jury was presented with evidence of the distances

involved, the shape of the road, the speed both vehicles were traveling, and the fact that the

Plaintiff had his blinker on.  Under the circumstances, a reasonable jury was entitled to draw the

reasonable inference that Defendant Gill acted unreasonably.  The jury was also entitled to

determine that it did not find Joey Parker's expert testimony credible.  The court finds that

granting the Renewed Motion for Judgment as a Matter of Law would amount to impermissibly

substituting its own judgment for that of the jury.  Therefore, that motion will be denied.

---

[1] In this instance and hereinafter, the page number in brackets refers to the internal numbering in the deposition.

**B.  Motion for New Trial**

**1.  Letter from Dr. Kenneth Burkus**

As the first ground upon which they argue they are entitled to a new trial, the Defendants allege that the court erroneously allowed Plaintiff's counsel to read a letter by witness Dr. Kenneth Burkus to the jury after Burkus's testimony by video deposition.

Before trial, the Defendants objected to Plaintiff's Exhibit 51.  This exhibit was labeled on Plaintiff's Exhibit List as a letter from another doctor, Dr. Waldrop, but the exhibit actually labeled as Exhibit 51 was a letter from Dr. Burkus, dated July 25, 2013 (Doc. # 76-19).  When the court ruled on the objection, the court was clear as to the inconsistency in the labels.  (Doc. # 91 at 3.)  The court ruled that the letter from Dr. Burkus was, as the Defendants had argued, hearsay, and that Dr. Burkus could "testify as to his findings, but the document itself [would] not be admitted."  (*Id.*)  At trial, Dr. Burkus testified by video deposition.  In his testimony, he discussed the letter with counsel for both sides.

In a sidebar interruption to the video deposition, counsel for both sides and the court discussed the testimony about the letter.  In response to protest by defense counsel as to any discussion of the letter in the testimony, the court clarified that its order "sustained the objection to the letter as such.  He can testify to what he—to what he wrote and what he said and all.  That was the point of all this. . . . I'll allow him to testify to what he said, yes, but the letter won't come in."  (Doc. # 118 at 83:14–16; 22–23.)  At that point, the rest of the video deposition was played.  Immediately thereafter, the court called counsel up for another sidebar.  The court and counsel discussed the fact that Dr. Burkus did not actually state the dollar figures from the letter out loud during the deposition, but, as Plaintiff's counsel argued, he "testified that all charges related to past and future would be reasonable and necessary."  (*Id.* at 85:5–6.)  In response to

6

both counsel's arguments, the court ruled that it would "allow the plaintiff's counsel to read Dr. Burkus's letter, but it won't come in as an exhibit." (*Id.* at 85:9–10.) After the sidebar, Plaintiff's counsel read the letter aloud to the jury. (*Id.* at 86:11–87:6.)

The Defendants now argue that the letter should not have been permitted to be read aloud to the jury because the order sustaining the pretrial objection agreed that it was hearsay. They argue that they were prejudiced because they knew the video deposition did not contain the dollar figures and therefore they did not prepare to rebut the dollar figures.

As a preliminary matter, the court notes that it rejects one of Plaintiff's arguments on this issue. The Plaintiff argues that the jury already heard the dollar figures in the letter during his counsel's opening statements, so the letter "did not tell the jury anything that they had not already heard." (Doc. # 124 at 16.) While it may be true that the jury had heard the figures, the court also instructed the jurors that "anything the lawyers say is not evidence in the case." (Doc. # 110 at 2.) The court agrees with the Defendants that the jury was not allowed to consider anything from the opening statements as evidence.

Nonetheless, the court's ruling was not erroneous and was consistent with its earlier order. The letter did not come in as an exhibit, as the order provided. Additionally, in the video deposition Dr. Burkus authenticated the letter, stating that it was "a letter I wrote and signed regarding the surgeries that Mr. Rogers would need and the anticipated costs for these services." (Doc. # 125-1 at 7 [23:16–19].) Defense counsel also cross-examined Dr. Burkus on the letter. During cross-examination, Dr. Burkus confirmed it was a letter he wrote, dated July 25, 2013, and he discussed how the letter was written and the method he used to determine the costs of the past and future medical procedures. (*Id.* at 8–10 [49:6–52:22].)

Thus, defense counsel had an adequate opportunity to cross-examine Dr. Burkus about

the letter, and did so in the video deposition.  Further, the court's ruling at trial was consistent with its pretrial order regarding the letter.  For these reasons, the court finds that this ruling did not affect the Defendants' "substantial rights" and that the reading of the letter is not an adequate ground to justify a new trial under Fed. R. Civ. P. 59.

### 2.  Evidence of South Star Logistics' Following-Distance Policy

As a second ground for the Motion for New Trial, the Defendants argue they were prejudiced by the admission of testimony relating to South Star Logistics' following-distance policy for drivers.  Before trial the Defendants filed a Motion in Limine seeking to prohibit the admission of any evidence from South Star Logistics' Company Policy and Safety Manual.  The court ruled that the exhibit required "a proper foundation in the form of evidence about the circumstances of the accident," and that such evidence "would include some grounds for the jury to conclude that insufficient following distance, at least in part, caused the accident."  (Doc. # 88 at 3 & n.2.)  At trial, Plaintiff's counsel asked Aman Brar, the owner of South Star Logistics, about the safety policies.  In a discussion at sidebar, defense counsel sought to prevent any discussion of the safety policies, and the court allowed a limited discussion of the company policy, with no discussion of any national standards.  (Doc. # 118 at 68:16–69:12.)  Plaintiff's counsel then elicited testimony from Aman Brar to the effect that South Star Logistics had a company policy that drivers were required to stay a minimum of seven seconds behind any vehicles they are following down the road.  (*Id.* at 69:15–21.)

Defense counsel argues that this testimony prejudiced the rights of the Defendants because the "Plaintiff used the Manual's recommended following distance as supposed evidence of a breached duty."  (Doc. # 120 at 26.)  Defendants add that "the jury must have believed Plaintiff's misleading reliance on the Manual's following-distance recommendation, as there is

no other evidence from which the jury could determine Mr. Gill acted unreasonably under the circumstances without improper speculation and conjecture." (*Id.*) The Defendants argue that reliance on the following-distance policy was improper because in the Plaintiff's version of the accident, Mr. Gill was not following the Plaintiff for an extended period of time but instead came upon him after the Plaintiff made a U-turn in preparation for a right turn off of the road.

The court disagrees with the Defendants' account of the evidence. Drawing all reasonable inferences in favor of the Plaintiff as the non-moving party, following distance provides an amount of space that a driver must maintain between his vehicle and a vehicle traveling in front of him. The jury could have used this evidence to infer that whenever Mr. Gill was first able to see the Plaintiff's vehicle in front of him, he should have noticed that he was getting too close to the vehicle—that is, closer than the seven-second following distance—and should have taken steps to correct that situation and keep sufficient distance between the tractor-trailer and the Plaintiff's vehicle.[2] There was evidence presented that the collision occurred after Mr. Gill's tractor-trailer approached the Plaintiff's vehicle from behind, that other vehicles moved into the left lane, and that Mr. Gill did not provide a reason that he did not also move into the left lane. The jury obviously rejected the Defendants' contention that the Plaintiff passed and cut in front of the tractor-trailer just before making the right turn, giving Gill no time to slow down. The court finds that before the following-distance policy was admitted the Plaintiff established sufficient foundation as to the circumstances of the accident such that Aman Brar could permissibly testify that the policy existed.

### 3. Evidence of Plaintiff's High Blood Pressure

Finally, the Defendants argue that their substantial rights were affected by testimony

---

[2] The court reiterates that, as discussed above, the jury was entitled to disregard the expert testimony of Joey Parker as not credible.

concerning the Plaintiff's blood pressure as a reason that he has not yet gotten the neck surgery that he alleges he needs as a result of the accident.  During direct examination of the Plaintiff, he began to answer questions to the effect that he was not able to get neck surgery in recent months because he had high blood pressure.  (Doc. # 118 at 57:1–3.)  Defense counsel objected on the ground that the testimony was inadmissible without supporting medical testimony.  (*Id.* at 57:4–6.)  In accordance with a previous order in limine, the court sustained the objection and stated that the Plaintiff could testify "as to how he felt, whether he had had high blood pressure in the past, things physical, but no diagnosis."  (*Id.* at 57:7–9; *see also* Doc. # 77 and 4–5.)  Shortly thereafter during direct examination, the court sustained two additional similar objections.  (Doc. # 118 at 57:17–18; 58:8–12.)

The Defendants now move for a new trial on the ground that the persistent mention of the Plaintiff's high blood pressure created prejudice against them, to the extent that it affected their substantial rights.  They argue that due to the repeated mentions of the Plaintiff's blood pressure issues and without a requested curative instruction, "the jury freely considered an explanation as to why Plaintiff had not had allegedly necessary surgery in the three years since the accident, despite such explanation being inadmissible evidence."  (Doc. # 120 at 33–34.)

In the Eleventh Circuit, "inadmissible extrinsic evidence is admissible on redirect as rebuttal evidence, when defense counsel has opened the door to such evidence during cross-examination." *United States v. West*, 898 F.2d 1493, 1500 (11th Cir. 1990).  In a situation where a defendant argued that a district court wrongly admitted testimony that a witness and his family had gone into hiding, the court applied the "opening the door" rule and concluded that "since defense counsel implied during cross-examination that [the defendant's plans to hire a hit man] were meaningless, the government was entitled to elicit testimony from [the witness] on redirect

that he took [the defendant's] plans seriously." *Id.* The Eleventh Circuit has continued to apply the opening the door doctrine in this manner, finding otherwise inadmissible evidence permissible where defense counsel opens the door to the evidence as rebuttal during cross-examination. *See, e.g.*, *United States v. Collier*, 385 F. App'x 876, 878 (11th Cir. 2010) (citing *West* for its explanation of the opening the door rule).

Likewise, defense counsel opened the door to blood pressure issues as the reason why the Plaintiff did not get neck surgery after he was able to obtain insurance. Throughout cross-examination of the Plaintiff, defense counsel's questions implied that the neck surgery was not really necessary because the Plaintiff had not gotten the surgery between the time of the accident and the time of the trial. After testimony that the Plaintiff could not have the surgery because he did not have Medicare, the defense counsel's questioning proceeded as follows:

> Q: Didn't you tell me that on March 31, 2015, just ten weeks ago, that you had signed up for ObamaCare?
> A: I did sign up for ObamaCare, and I just got it in February.
> Q: And since February, you've never tried to sign up for the surgery?
> A: I signed—go to my doctor and see can he transfer me back to Dr. Burkus. It wouldn't be no trouble for me to have the surgery. He said he could transfer me back over there with Mr. Burkus, but my blood pressure was too high to send me over there.

(Doc. # 118 at 66:14–23.) In this line of questioning, defense counsel opened the door for Plaintiff to rebut the argument that the reason he had not had the surgery was because he did not actually need it to repair the injuries inflicted in the collision. For the same reasons discussed by the Eleventh Circuit in the decisions cited above, it was permissible for the Plaintiff to testify that the reason he did not get the surgery after he obtained medical insurance was not because he did not really need it, but because the doctors would not perform it due to his blood pressure issues.

Because defense counsel opened the door in the instance described above, any previous

mentions, even in violation of the court's admonishments, constituted harmless error under Fed. R. Civ. P. 61. Because the jury permissibly heard in the context of cross-examination that the Plaintiff had not had the surgery because of high blood pressure, previous mentions of the issue did not affect the Defendants' substantial rights. Therefore, this ground is not one that justifies granting the Motion for New Trial. *See* Fed. R. Civ. P. 61.

## C. Motion to Stay Execution of Judgment and Waive Bond Requirement

The Defendants also ask the court to stay the execution of the judgment pending disposition of these post-trial motions and possible appeal, pursuant to Fed. R. Civ. P. 62. Normally, the party moving for a stay is required to post a bond "to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting and Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979).[3] However, a court may waive the bond requirement in two situations: "(1) where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and, (2) where the requirement would put the defendant's other creditors in undue jeopardy." *Servicio Marina Superior, LLC v. Matrix Int'l Ltd.*, No. 07-0770-KD-C, 2009 WL 931150, at *1 (S.D. Ala. Mar. 31, 2009) (citing *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986)). The Defendants argue the first exception is applicable here because South Star Logistics is sufficiently insured to pay the judgment, the settlement with former Plaintiff Robert Rogers, and any interest that will accrue. In support, the Defendants have provided an affidavit by Angela Duguay, Claims Specialist for New York Marine and General Insurance Company, the insurance provider for South Star Logistics' insurance policy (Doc. # 120-2); and a copy of the policy itself (Doc. # 120-3).

---

[3] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The Plaintiff has expressly stated that he does not object to the Motion to Stay Execution of Judgment of the waiver of the bond requirement.  (Doc. # 124 at 1.)  Although the policy limits are redacted in all documents in the record, defense counsel have represented, as officers of the court, that the policy limits are sufficient to cover the judgment and any interest in full.[4] For these reasons, the Motion to Stay Execution of the Judgment will be granted and the bond requirement will be waived.

## IV. Conclusion

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motions for Judgment as a Matter of Law and for a New Trial (Doc. # 120) are DENIED.

2.  The Motion for Stay of Execution of Judgment (Doc. # 120) is GRANTED.

3.  The bond requirement set forth in Fed. R. Civ. P. 62(d) is WAIVED.

DONE this 26th day of August, 2015.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The court has also reviewed an unredacted version of the filings and exhibits in camera.